UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  #43(1/25)

| Case No. | CV 19-5726 PSG (PLAx) | Date | January 19, 2021 |
|---|---|---|---|
| Title | Ashar Khan v. Allstate Northbrook Indemnity Company, et al. | | |

Present: The Honorable  Philip S. Gutierrez, United States District Judge

| Wendy Hernandez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings (In Chambers):**   **The Court GRANTS Defendant's motion for summary judgment**

Before the Court is a motion for summary judgment filed by Defendant Allstate Northbrook Indemnity Company ("Defendant"). *See generally* Dkt. # 43-1 ("*Mot.*").[1]  Plaintiff Ashar Khan ("Plaintiff") opposed. *See generally* Dkt. # 49 ("*Opp.*"). Defendant replied. *See generally* Dkt. # 60 ("*Reply*"). The Court finds the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering the moving, opposing, and reply papers, the Court **GRANTS** Defendant's motion for summary judgment.

I.   Background

This case arises out of Defendant Allstate's alleged bad faith failure to timely pay Plaintiff's underinsured motorist claim. *See generally Complaint*, Dkt # 1-2 ("*Compl.*").

Around March 7, 2018, Plaintiff was injured in a car accident. *Defendant's Statement of Uncontroverted Facts*, Dkt. # 43-2 ("*DSUF*"), ¶ 8.[2]  The other driver involved in the accident was insured by GEICO, which ultimately accepted fault for the accident. *Id.* On October 25, 2018, GEICO paid Plaintiff its bodily injury policy limit of $15,000. *Id.* ¶ 23.

Under Plaintiff's policy with Defendant, Plaintiff had coverage for bodily injury from auto accidents up to $25,000. *Id.* ¶ 1. This amount is offset by any payment Plaintiff receives

---

[1] Defendant's motion is Docket Entry # 43, but the Court cites to the memorandum in support of the motion, Docket Entry # 43-1, because it contains Defendant's substantive arguments.
[2] Disputed facts are taken in Plaintiff's favor. Where the Court cites to Defendants' statement of facts, it does so because either (1) Plaintiff does not dispute the fact, or (2) although Plaintiff attempted to dispute the fact, the Court finds the dispute is not genuine or is immaterial.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-5726 PSG (PLAx) | Date | January 19, 2021 |
|---|---|---|---|
| Title | Ashar Khan v. Allstate Northbrook Indemnity Company, et al. | | |

from other parties involved in an accident. *Id.* ¶ 3. Therefore, on October 31, 2018, Plaintiff's counsel sent a demand letter ("First Demand Letter") to Defendant, requesting $10,000, which represented the limit of his policy after deducting the $15,000 payment he received from GEICO. *See id.* ¶ 24.

Included with the First Demand Letter was a physician's report. *See* Dkt. # 43-12 at 25–30.[3] The report stated that Plaintiff was "a candidate for left shoulder arthroscopy." *Id.* at 30. To "better assess and treat" Plaintiff, the report "request[ed] an MRI of the left shoulder with arthrogram." *Id.* The physician would "see him back in our clinic after 4-5 weeks to reassess." *Id.*

Defendant concluded that the claim was not worth the amount Plaintiff sought and requested more records from him. *DSUF* ¶¶ 33–35. On November 16, 2018, unbeknownst to Defendant, Plaintiff underwent shoulder surgery. *Id.* ¶ 63.

On December 27, 2018, Plaintiff's counsel sent another demand letter ("Second Demand Letter") to Defendant. *Id.* ¶ 36. Plaintiff's letter did not state that he needed, or had undergone, surgery. *Id.* ¶¶ 41–42. On January 7, 2019, Defendant offered Plaintiff $1,000. *Id.* ¶ 53. The letter stated that the offer was based on the information available to Defendant, and that Defendant would review any additional information from Plaintiff that it had not yet considered. *Id.* ¶ 54.

That same day, Plaintiff's counsel sent Defendant another demand letter ("Third Demand Letter"), which requested $50,000. *Id.* ¶ 55. Like the Second Demand Letter, Plaintiff did not inform Defendant that he needed, or had undergone, surgery. *Id.* ¶ 57. On January 9, 2019, Defendant offered Plaintiff $1,200, and again noted that it would consider any additional information that Plaintiff had not yet provided. *Id.* ¶¶ 59–60.

In mid-January of 2019, Plaintiff's counsel left a message with Defendant stating that Plaintiff would have surgery—which had actually already occurred in November of 2018—but did not provide Defendant with any medical records. *Id.* ¶ 61. On January 28, 2019, Defendant acknowledged its belief that Plaintiff would be having surgery. *See* Dkt. # 53-18 at 2 ("[W]e are pending our insured to complete shoulder surgery.").

---

[3] The Court cites to the page of this Docket Entry's PDF, rather than the Docket Entry's original pagination, throughout this Order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-5726 PSG (PLAx) | Date | January 19, 2021 |
|---|---|---|---|
| Title | Ashar Khan v. Allstate Northbrook Indemnity Company, et al. | | |

On February 22, 2019, Plaintiff's counsel sent another demand letter ("Fourth Demand Letter") to Defendant, requesting $1,000,000. *DSUF* ¶ 62. For the first time, Plaintiff revealed to Defendant that he had undergone shoulder surgery in November of 2018. *Id.* ¶¶ 63, 65. Ten days later, on March 4, Defendant offered Plaintiff the remaining $10,000 of his policy's limit. *Id.* ¶ 66. Plaintiff's counsel cashed Defendant's $10,000 check, *id.* ¶ 67–68, and sent another demand letter for an additional $48,000 on March 20. *Id.* ¶ 69. The record does not reflect Defendant's response to this letter.

As a result of these events, on April 18, 2019, Plaintiff filed suit in the Los Angeles County Superior Court. *See Notice of Removal*, Dkt. # 1 ("*NOR*"), ¶ 1. Plaintiff brings two causes of action:

> First Cause of Action: breach of contract. *Compl.* ¶¶ 23–27.
>
> Second Cause of Action: tortious breach of the implied covenant of good faith and fair dealing. *Id.* ¶¶ 28–38.

Defendant now moves for summary judgment on Plaintiff's two causes of action. *See generally Mot.* For the reasons provided below, the Court **GRANTS** Defendant's motion.

II.     Evidentiary Objections

Plaintiff purportedly asserts various evidentiary objections in response to Defendant's statement of undisputed facts, *see generally Plaintiff's Statement of Genuine Disputes of Material Facts*, Dkt. # 55 ("*PSGD*"), and Defendant objects to various declarations of Plaintiff, *see generally* Dkts. # 60–62. To the extent the Court relies on objected-to evidence in this Order, such objections are **OVERRULED**. *See Godinez v. Alta-Dena Certified Dairy LLC*, No. CV 15-01652 RSWL (SSx), 2016 WL 6915509, at *3 (C.D. Cal. Jan. 29, 2016).

III.    Legal Standard

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-5726 PSG (PLAx) | Date | January 19, 2021 |
|---|---|---|---|
| Title | Ashar Khan v. Allstate Northbrook Indemnity Company, et al. | | |

      A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the nonmoving party will have the burden of proof at trial, the movant can prevail by pointing out that there is an absence of evidence to support the moving party's case. *See id.* If the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

      In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. Rather, it draws all reasonable inferences in the light most favorable to the nonmoving party. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987). The evidence presented by the parties must be capable of being presented at trial in a form that would be admissible in evidence. *See* Fed. R. Civ. P. 56(c)(2). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

IV.    <u>Discussion</u>

      The Court first considers Plaintiff's attempt to raise a claim regarding Defendant's handling of his vehicle's repair (as opposed to his bodily injury claims). The Court then considers Plaintiff's two causes of action in turn.

      A.    <u>Plaintiff's Claim Regarding the Repair of his Vehicle</u>

      Defendant argues that Plaintiff's claim regarding Defendant's allegedly improper handling of his vehicle's repair is not in the complaint and therefore is not properly before the Court. *Mot.* 23:10–23.[4] As such, Defendant contends that "it cannot serve as a basis for opposing or denying summary judgment." *Id.* at 23:10–11.

      Plaintiff counters that the claim is, in fact, in the original complaint, and that "Defendant ha[s] received adequate notice of the facts concerning the repair of Plaintiff's vehicle." *Opp.* 6:6–13. The Court disagrees with Plaintiff and agrees with Defendant.

---

[4] Throughout this Order, the Court cites to the original pagination of Defendant's motion and Plaintiff's opposition.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-5726 PSG (PLAx) | Date | January 19, 2021 |
|---|---|---|---|
| Title | Ashar Khan v. Allstate Northbrook Indemnity Company, et al. | | |

First, nothing in the original complaint suggests, let alone explicitly mentions, that Plaintiff was bringing a claim regarding the repair of his vehicle. On the contrary, the sole, repeated allegation in the complaint is that Defendant delayed paying Plaintiff for the personal injuries he suffered. *See Compl.* ¶ 15 (referring to "voluminous medical records" and the "need for shoulder surgery"); *id.* ¶ 17 (same); *id.* ¶ 18 (referring to the "need for surgical intervention"); *id.* ¶ 20 (referencing surgery); *id.* ¶ 31 (referring to "repeated demand for payment for his bodily injuries"); *id.* ¶ 33.a (same).

Second, Plaintiff fails to cite any law supporting his proposition that he was not required to plead his claim because Defendant knew of the facts underlying the claim. *See Opp.* 6:6–13.

Accordingly, the Court does not consider Plaintiff's claim concerning the repair of his vehicle because it is not properly before the Court. *See Bybee v. Bank of Am., N.A.*, 768 F. App'x 660, 662 (9th Cir. 2019) (declining to consider claims that were not presented in the complaint). The Court next turns to Plaintiff's two causes of action.

### B.    First Cause of Action: Breach of Contract

Defendant argues that Plaintiff's breach of contract claim fails because Defendant paid Plaintiff the policy's liability limit. *Mot.* 15:17–16:26. Defendant cites *Paulson v. State Farm Mut. Auto. Ins. Co.*, 867 F. Supp. 911 (C.D. Cal 1994), in support of its position.

In *Paulson*, the defendant insurer initially denied coverage for injuries sustained in a car crash caused by an underinsured motorist because (1) the plaintiff had already received roughly two-thirds of his policy limit from the at-fault driver's insurer and workers' compensation, and (2) medical records indicated that the plaintiff had fully recovered. *Id.* at 913. Later, the plaintiff claimed that he (a) had not fully recovered, (b) had residual symptoms, and (c) suffered lost wages for which the insurer had not, but should have, compensated him. *Id.* at 916. The defendant then offered to pay the plaintiff the remaining amount of his liability policy limit, but the plaintiff rejected the offer. *Id.* The plaintiff counter-demanded for roughly four times his policy limit, which the defendant rejected, and the parties proceeded to arbitration. *Id.* The arbitrator awarded the plaintiff the remaining amount of his liability policy limit—i.e., the amount defendant had previously offered. *Id.* Still unsatisfied, the plaintiff filed suit for, among other things, breach of contract. *Id.* at 913.

The Court found that the plaintiff's breach of contract claim failed because the plaintiff suffered no damages as a matter of law. *Id.* at 918. Specifically, the plaintiff could not claim

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-5726 PSG (PLAx) | Date | January 19, 2021 |
|---|---|---|---|
| Title | Ashar Khan v. Allstate Northbrook Indemnity Company, et al. | | |

(1) emotional distress damages because such a remedy is not available for breach of contract, (2) damages in the form of arbitration costs because the plaintiff chose to arbitrate his claim instead of accepting the defendant's offer of his policy's liability limit, or (3) damages in the form of increased attorneys' fees because the plaintiff retained his attorney before the defendant initially refused to pay his claim. *Id.* at 917–18.

Here, Plaintiff argues that *Paulson* is distinguishable: "In the [*Paulson*] case[,] it was determined there was no breach because the plaintiff . . . rejected an offer of the policy limits and then went on to incur further expenses." *Opp.* 9:28–10:2. The Court disagrees.

Plaintiff does not offer any additional explanation of this perplexing distinction. The fact that the plaintiff in *Paulson rejected* the offer and then proceeded to arbitrate and litigate his claim, whereas, here, Plaintiff *accepted* the offer and then proceeded to litigate his claim, does not warrant a divergent outcome between the two cases. In both situations, the plaintiffs retained counsel before the defendants' initial payment decisions and chose to incur expenses—i.e., attorneys' fees—*after* being offered their policy's liability limit.[5] *See Mot.* 25:17–19; *Paulson*, 867 F. Supp. at 918. Because Plaintiff does not identify any damages that he suffered other than those rejected as a matter of law in *Paulson*, Defendant's alleged breach did not damage Plaintiff, and, therefore, Defendant is entitled to summary judgment.

Accordingly, the Court **GRANTS** Defendant summary judgment on Plaintiff's first cause of action for breach of contract.

C. <u>Second Cause of Action: Breach of the Implied Covenant of Good Faith and Fair Dealing</u>

Under California law, there is a threshold requirement of economic loss to prevail on a claim for bad faith. *See Maxwell v. Fire Ins. Exch.*, 60 Cal. App. 4th 1446, 1450–51 (1998); *Waters v. United Servs. Auto. Ass'n*, 41 Cal. App. 4th 1063, 1069 (1996); *McCarthy v. State*

---

[5] Plaintiff apparently argues that, while he retained Kashani for the purposes of his breach of contract claim on March 22, 2018, he did not retain Kashani for the purposes of his bad faith claim until the day before he filed his complaint in the Superior Court—i.e., April 17, 2019. *See PSGD* ¶ 87; *Declaration of Jonathan Kashani*, Dkt. # 52 ("*Kashani Decl.*"), ¶ 40. Even if true, this point is irrelevant. Plaintiff has offered no persuasive argument why he can recover attorneys' fees that he incurred *to pursue his bad faith claim* as damages under his *breach of contract* cause of action. And even if he offered such an argument, he cannot recover attorneys' fees for his bad faith cause of action, as discussed below.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-5726 PSG (PLAx) | Date | January 19, 2021 |
|---|---|---|---|
| Title | Ashar Khan v. Allstate Northbrook Indemnity Company, et al. | | |

*Farm Mut. Ins. Co.*, 2000 U.S. Dist. LEXIS 12020, at *13 (C.D. Cal. Aug. 4, 2000) ("[P]roof of 'substantial' economic damages is a threshold element in any bad faith claim . . . .").

Defendant argues that "[n]one of the alleged economic damages that [P]laintiff has identified can support a cause of action for bad faith." *Mot.* 25:9–10. Plaintiff conceded this argument by failing to oppose it. *See Ward v. Nat'l Entm't Collectibles Ass'n, Inc.*, No. CV 11-06358 MMM (CWx), 2012 WL 12885073, at *10 (C.D. Cal. 2012). However, to the extent that Plaintiff's general allegation that his "attorney[s'] fees escalated as a result of [Defendant's] failure to timely and reasonably pay his underinsured motorist benefits" could be construed as a rebuttal to Defendant's argument, *see Opp.* 7:8–9, such fees are not recoverable here.

For a bad faith claim, "[f]ees attributable to obtaining any portion of the plaintiff's award which exceeds the amount due under the policy are not recoverable." *See Howard v. Am. Nat'l Fire Ins. Co.*, 187 Cal. App. 4th 498, 534 (2010) (quoting *Brandt v. Superior Court*, 37 Cal. 3d 813, 817 (1985)). Therefore, because Defendant paid Plaintiff his policy liability limit before Plaintiff filed suit, any recovery for Plaintiff under his bad faith cause of action would "exceed[] the amount due under the policy." *See id.* Accordingly, the Court **GRANTS** Defendant summary judgment on Plaintiff's second cause of action for breach of the implied covenant of good faith and fair dealing.

V.  Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant summary judgment on Plaintiff's first and second causes of action. This Order closes the case.

**IT IS SO ORDERED.**